1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIE WALKER, | ) | 1:10cv0920 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Marie Walker ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

On February 25, 2005, Plaintiff protectively filed an application for SSI.  AR 152, 154-55.  She alleged disability since December 1, 2003, due to back pain and spasms, paranoia, arthritis, high blood pressure and headaches.  AR 88, 153-55, 170.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge

---

[1] References to the Administrative Record will be designated "AR," followed by the relevant page number.

1

1    ("ALJ").  AR 88-92, 95-100, 101-02.  On October 30, 2007, ALJ James P. Berry held a hearing.

2    AR 25-49.  ALJ Berry denied benefits on January 7, 2008.  AR 6-17.  The Appeals Council

3    denied Plaintiff's request for review on March 26, 2010.  AR 1-4.

4            Hearing Testimony

5            ALJ Berry held a hearing on October 30, 2007, in Fresno, California.  AR 25.  Plaintiff

6    appeared with her attorney, Robert Christenson.  Vocational expert Thomas Dachelet also

7    appeared and testified.  AR 25, 27.

8            Plaintiff was born in 1957 and has an eleventh grade education.  She last worked in 2004

9    or 2005 doing in-home care for about six months.  Prior to that, she worked as a telemarketer off

10   and on for about two years.  Since 1990, she has not had any other jobs.  As a telemarketer, she

11   answered phones all day.  She did not do any lifting or carrying, just sitting.  AR 30-21.

12           Plaintiff testified that her appearance keeps her from working.  She cannot sit or walk

13   long.  She gets mixed up with her speech and thinks she had a slight stroke in her mouth when

14   working as a telemarketer.  AR 32.

15           Plaintiff reported that she is currently going to mental health because she hears voices and

16   cannot sleep at night.  She also has depression and anxiety, with anxiety attacks three or four

17   times a week.  She doesn't know what triggers them, but she gets upset everyday.  AR 32.

18           Plaintiff testified that she has pain in her legs and has arthritis.  She receives treatment

19   from Hillman Health and from mental health.  Her mental health medications, Seroquel and

20   Risperdal, make her drowsy and sleepy.  AR 33-34.

21           Plaintiff admitted that she smoked crack cocaine, but has not used it for three or four

22   months.  Before that, she used it two or three times a week.  She was able to stop because Mental

23   Health told her that the pills she takes won't work with street drugs.  Although Plaintiff testified

24   to being clean and sober for three or four months, she admitted to alcohol use and drinking "a

25   40" once or twice a week.  AR 34-35.

26           Plaintiff stated that she can lift and carry about ten pounds.  She can stand about 15 to 30

27   minutes and can sit about 30 minutes.  In an eight-hour day, she can stand about four hours and

28

can sit about four hours.  She can walk about a block.  She needs to rest four to six hours in an eight-hour day because of her medication, legs and back.  AR 35-36.

Plaintiff testified that she cannot pay attention "that good" and cannot think "that much." AR 37.  She can concentrate about 15 to 30 minutes at one time.  She has really bad days about four days a week.  On a bad day, she can't concentrate and can't seem to get up and "get it together."  She can't walk and is mad all the time.  AR 37.

On a normal day, she tries to clean up and to cook.  She does laundry and her mother helps her.  She lives with a friend in a cottage, which is like a motel.  The cottage has a kitchenette, but it does not have a washer/dryer.  She cannot sweep or vacuum.  For fun, she watches TV for at least six hours a day.  AR 37-39.

Plaintiff does not have a current driver's license, but drives without it once or twice a month.  She is paranoid when driving.  AR 39-40.

Plaintiff testified that she hears voices mumbling to her every day and at night.  She takes Risperdal for the voices.  AR 40.  She gets along with other people fairly well, but only has one friend, her mom.  Roy, the person she lives with, also is a friend.  AR 40-41.  She reported that she cannot look for a job because of her mouth.  She explained that she could not get help fixing her teeth.  AR 41-42.

In response to questions from the ALJ, Plaintiff affirmed that her current medications were helpful.  Every other month, they put her dosage up.  She also receives individual counseling every two weeks.  She supports herself with general assistance.  AR 43.

The VE also responded to questions from the ALJ.  He described Plaintiff's telemarketing work as sedentary, SVP three, semi-skilled with no transferability.  He reported that the work history report reflected the McDonald's work as short-order cook, not cashier.  A short-order cook is light, SVP three, semi-skilled with no transferability and cashier is light, unskilled.  The in-home health services is medium, SVP three with no transferability.  AR 44-45.  Plaintiff clarified that she did not cook at McDonald's.  She bagged food and ran the cash register.  AR 45.

1    For the first hypothetical, the ALJ asked the VE to assume an individual 50 years of age
2    with an eleventh grade education and Plaintiff's past relevant work experience.  This individual
3    also retained the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds
4    frequently and to stand, walk and sit six hours each.  This individual retained the ability to
5    perform simple, repetitive tasks, to maintain attention, concentration, persistence and pace, to
6    relate to and interact with others, to adapt to usual changes in the work setting and to adhere to
7    safety rules.  The VE testified that such an individual could perform Plaintiff's past work at
8    McDonald's.  This individual also could perform the full range of light, unskilled and sedentary,
9    unskilled work.  At the light level, representative jobs included a bagger with 31,833 jobs in
10   California, garment worker with 34,065 jobs in California, and grader with 20,878 jobs in
11   California.  AR 45-46.

12   For the second hypothetical, the ALJ asked the VE to assume an individual with the same
13   vocational parameters and severe impairments as the first hypothetical.  The ALJ also asked the
14   VE to assume that this individual retained the residual functional capacity to lift and carry ten
15   pounds maximum; sit and stand four hours; and walk one block maximum.  This individual
16   would need a rest break four to six hours each day, preferably in the afternoon, and would have
17   difficulty maintaining concentration and attention to task.  The VE testified that this individual
18   could not perform Plaintiff's past work or any other jobs in the national economy.  AR 46-47.

19   For the third hypothetical, Plaintiff's attorney asked the VE to assume a person of the
20   same age, education and work experience with a poor ability to maintain attention and
21   concentration.  According to the VE, this person could not perform Plaintiff's past relevant work
22   or any other work in the national economy.  AR 47.

23   For the fourth hypothetical, Plaintiff's attorney asked the VE to assume a person with a
24   poor ability to complete a normal workday and work week without interruptions at a consistent
25   pace.  The VE testified that this person could not perform Plaintiff's past relevant work or any
26   other work in the national economy.  AR 48.

27

28

1        <u>Medical Record</u>

2        On November 5, 2003, Plaintiff sought treatment at Hillman Health Center for back pain.

3   She demanded codeine for relief, claiming that she had received some in Sacramento, but she

4   did not have a copy of the prescription or empty medication bottle.  The treating physician

5   recommended that Plaintiff obtain a lower back x-ray and try anti-inflammatory medication.

6   Plaintiff refused and began accusing the clinic of not giving her healthcare.  The treating

7   physician opined that Plaintiff was not in any significant, severe pain.  AR 223.

8        On November 17, 2003, Plaintiff again complained of severe back pain.  She was advised

9   to take Celebrex.  AR 222.

10       In January 2004, Plaintiff sought treatment at Hillman Health Center, complaining of

11  generalized body pain and requesting Vicodin.  When advised to take another medication,

12  Plaintiff said she only wanted Vicodin because it helped to relieve the pain.  AR 220.

13       On June 21, 2004, Plaintiff sought treatment at Hillman Health Center for back pain and

14  leg pain.  The physician noted that her blood pressure was controlled with Atenolol and Norvasc.

15  On examination, she had mild tenderness of the lumbosacral spine.  She was diagnosed with

16  back pain and hypertension.  Her prescriptions included Piroxicam and Darvocet for pain.  AR

17  239.

18       A renal ultrasound completed in August 2004 was negative.  AR 246.

19       On October 18, 2004, Plaintiff returned to Hillman Health Center for a refill of her

20  medications.  She was diagnosed with hypertension and prescribed continued use of Atenolol and

21  Norvasc, along with Clonidine and Amoxicillin.  AR 245.

22       On August 22, 2005, Plaintiff sought treatment for complaints of crippling arthritis and

23  leg pain.  She also reported feeling depressed, with crying, anger and stress.  She wanted papers

24  filled out for welfare and disability.  AR 258.  X-rays of her hands and knees were normal.  AR

25  259.

26       On December 3, 2005, Dr. James Nowlan, Jr., completed a consultative internal medicine

27  evaluation.  Plaintiff reported constant leg pains extending from the hips to the feet, which were

28  not affected by walking, lifting, bending or anything else.  She also claimed constant lower back

pain, which was not affected by exercise, walking, or bending.  She also had tested positive for
hepatitis B and had headaches all day every day.  AR 267.  During examination, Plaintiff could
only bend to 20 degrees, but was able to bend over and tie her shoes when the examine ended.
Dr. Nowlan diagnosed her with hypertension and pain syndrome.  Dr. Nowlan stated there were
"absolutely no physical findings . . . to go along with any of her complaints of pain" and he was
"unable to elicit any pain by anything [he] did."  AR 269.  He opined that she could stand and
walk for eight hours, could sit without limitation and could lift 10 pounds frequently and 40
pounds occasionally.  AR 270.

On December 5, 2005, Greg Hirokawa, Ph.D., completed a comprehensive psychiatric
evaluation.  Plaintiff was "selectively mute throughout the interview."  AR 261.  Plaintiff's
mother reported that Plaintiff was depressed, heard voices, had poor sleep and mood swings,
went through her purse like she was looking for something, had difficulty being around others,
was paranoid easily, was upset, had difficulty concentrating and was worried.  AR 261.
Plaintiff's mother also reported that Plaintiff got along well with coworkers, but was not able to
work.  AR 262.  On a typical day, Plaintiff woke up at noon, made her bed and looked in her
purse.  AR 262.  She had a history of alcohol and drug use, and her drug of choice was rock
cocaine.  AR 262-63.

On mental status examination, Plaintiff's hygiene was disheveled and her clothing
unkempt.  Her eye contact was poor and her facial expressions were flat.  She rocked back and
forth and from side to side.  Her behavior was withdrawn and she searched through her purse
throughout the interview.  When she spoke, her stream of mental activity appeared within normal
limits.  Dr. Hirokawa could not determine thought content, hallucinations or delusional thinking.
Her reality contact appeared intact as she seemed to track conversations.  Her mood appeared
depressed, and her affect was flat and restricted.  AR 263.  Her intellectual functioning appeared
to be within the below-average range.  She did not know one plus two, and could not perform a
simple three-step command.  She provided no answer to questions involving abstract thinking,
similarities and differences, and judgment and insight.  AR 264.

Dr. Hirokawa diagnosed depressive disorder NOS, and assigned her a Global Assessment of Functioning ("GAF") of 60.  He noted that Plaintiff presented significantly different than a May 2004 report of contact in which she claimed arthritis, not paranoia, prevented her from working.  Dr. Hirokawa opined that Plaintiff's symptoms appeared to be atypical of someone who had a psychosis.  Although she looked through her purse, she did not appear to be responding to internal stimuli.  AR 264.  Dr. Hirokawa concluded that Plaintiff did not appear capable of managing her funds.  Her ability to understand and remember very short and simple instructions appeared fair, but her ability to understand and remember detailed instructions was not able to be determined because of her inability to answer questions.  Her ability to maintain attention and concentration was poor.  Additionally, her ability to accept instructions from a supervisor and respond appropriately and her ability to sustain an ordinary routine without special supervision were not able to be determined.  Her ability to complete a normal workday and workweek without interruptions at a consistent pace appeared poor.  Her ability to interact with coworkers and to deal with the various changes in the work setting also appeared poor.  The likelihood of her emotionally deteriorating in a work environment was moderate.  AR 264-65.

On January 19, 2006, Dr. Evelyn Aquino-Caro, a state agency physician, completed a Psychiatric Review Technique form.  She opined that Plaintiff had moderate restriction of activities of daily living, moderate restriction in maintaining social functioning and moderate restriction in maintaining concentration, persistence or pace.  Dr. Aquino-Caro noted that Plaintiff's credibility had been called into question to some degree.  AR 272-85.

On the same date, Dr. Aquino-Caro completed a Mental Residual Functional Capacity Assessment form.  She opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions and moderate limitations in the ability to carry out detailed instructions.  By December 2006, Plaintiff would be capable of performing simple, repetitive tasks with adequate concentration.  She also would be capable of relating to coworkers, supervisors, and the general public and would be capable of adapting to a routine job.  AR 286-88.

On January 26, 2006, Dr. Wong, a state agency physician, completed a Physical Residual Functional Capacity Assessment form.  Dr. Wong opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or pull without limitation.  She had no postural, manipulative, visual, communicative or environmental limitations.  AR 290-97.

On May 5, 2006, Plaintiff tested positive for cocaine.  AR 303.

On August 3, 2006, Plaintiff saw Dr. Chi Nguyen at Hillman Health Center.  Plaintiff complained of pain in her fingers and numbness in her toes.  She also reported being unable to sleep, being easily angered and hearing people talking to her.  On examination, her pedal pulses were 2+ in both feet and her finger joints had full range of motion.  Dr. Nguyen assessed her with hypertension, anxiety and possible hallucinations.  She was referred to mental health.  AR 312.

On August 8 and 17, 2006, an Intake Assessment was completed by Toni Saltzman, MFT, at Tulare County Mental Health.  AR 391-92.  Plaintiff reported experiencing auditory hallucinations for the past 2-3 years.  She also reported that she cried, felt fatigued, had difficulty focusing her thoughts, and was irritable and angry all of the time.  She also felt self-conscious about her appearance, because of severe damage to her teeth.  Plaintiff claimed that she had not used marijuana for three years and had not used crack cocaine since 1978.  On mental status exam, her affect was blunted and mood irritable.  She was diagnosed with major depressive disorder, single episode, severe with psychotic symptoms, rule out posttraumatic stress disorder and rule out alcohol dependence.  She was to participate in therapy and be referred for medication.  AR 393-98.

On September 14, 2006, Plaintiff saw Dr. Nguyen to have her disability papers filled out.  Plaintiff complained that she could not sleep at night.  She denied illicit drug use, but a May drug screen was positive for cocaine.  AR 310.  Dr. Nguyen diagnosed Plaintiff with hallucinations/anxiety and hypertension not under control.  Additionally, Dr. Nguyen signed Plaintiff's papers for two months of disability.  AR 310.

1   Between September 20, 2006, and October 25, 2006, Plaintiff attended individual therapy
2   at Tulare County Mental Health.  AR 384, 385, 386, 387.

3   On October 27, 2006, Plaintiff's hypertension was stable.  AR 308.

4   On November 16, 2006, Dr. Ina Shalts of the Tulare Adult Clinic completed a psychiatric
5   evaluation.  Plaintiff complained of back pain, high blood pressure and depression.  She reported
6   sleeping three hours a night, feeling depressed, hearing voices mumbling and rambling every
7   night, being scared and paranoid and experiencing racing thoughts.  Plaintiff began taking
8   cocaine at age 17, but reported not using it for the last seven years.  She smoked one pack of
9   cigarettes a day.  On exam, she was cooperative, fairly groomed and partially dressed.  Her affect
10  was flat and her insight and judgment were limited.  Dr. Shalts diagnosed major depressive
11  disorder, recurrent, severe, with psychotic features, rule out posttraumatic stress disorder and rule
12  out schizoaffective disorder.  Dr. Shalts assigned Plaintiff a GAF of 50 and prescribed Seroquel
13  for psychosis and Zoloft for depression.  AR 379-81.

14  On December 18, 2006, Dr. Shalts indicated that Plaintiff was positive for cocaine on
15  December 8, 2006.  Plaintiff said it was the last time she used cocaine.  She also reported being
16  depressed and hearing voices at night.  On examination, her front teeth were absent, her mood
17  was depressed and her affect was flat.  Dr. Shalts diagnosed major depressive disorder, recurrent,
18  severe, with psychotic features, rule out cocaine-induced psychotic disorder and cocaine
19  dependency.  AR 376.

20  Plaintiff did not attend mental health therapy between October 2006 and January 23,
21  2007.  AR 375.  Thereafter, she resumed therapy through October 18, 2007.  AR 314, 319, 321,
22  334, 341, 345, 350, 360, 367, 373.

23  On January 29, 2007, Plaintiff reported to Dr. Shalts that her medication was helping
24  decrease her depression significantly.  She was sleeping better, but still hearing voices mumbling
25  and rambling.  During the interview, she was cooperative and her mood was good.  Her affect
26  was flat and her insight and judgment were limited.  AR 270.

27  On April 10, 2007, Plaintiff reported to Dr. Shalts that she was doing well on her
28  medication and had no side effects, but she was still hearing mumbling and rambling voices at

night.  She also stated that she was no longer using cocaine.  On examination, her mood was euthymic and her memory was intact.  Dr. Shalts increased Seroquel at night for psychosis and she was to continue Zoloft for depression.  AR 352.

On May 22, 2007, Plaintiff's hypertension was not under control.  Dr. Nguyen noted that Plaintiff was last seen at Hillman Health Center in October 2006, and she was non-compliant to treatment.  AR 308.

On May 29, 2007, Dr. Shalts indicated that Plaintiff's urine drug screen was positive for cocaine in December, but she was not using any more drugs.  During the examination, she was cooperative and had good eye contact.  She reported hearing voices mumbling and rumbling when falling asleep.  Dr. Shalts assessed major depressive disorder, recurrent, severe, with psychotic features.  AR 339.

On June 19, 2007, Plaintiff sought treatment at Hillman Health Center for hypertension. She wanted a Vicodin prescription for back pain, which the provider denied.  She was to continue with Ultram for leg cramps and Amitriptyline for insomnia.  AR 307.

On June 27, 2007, Randy Barclay, PA, of Tulare County Adult Services, indicated that Plaintiff had a drug test on her last visit and was positive for marijuana, cocaine and opiates. Although non-compliant with her medications, she reported no side effects.  PA Barclay advised her to stop street drugs and to stop her Vicodin.  He also discussed that street drug use caused most of her psychotic paranoid thinking.  A supervising psychiatrist signed the progress note. AR 329-30.

On July 26, 2007, PA Barclay noted that Plaintiff continued to use street drugs.  She was still hearing some voices, but they did not bother her.  She was non-compliant with her medications and reported no side effects.  On mental status exam, her affect was appropriate and her mood was normal.  Her memory was intact and her speech was normal.  Her judgment and insight were mildly impaired.  PA Barclay advised her to stop street drug use, noting that it was hindering her medications and possibly worsening her auditory hallucinations.  A supervising psychiatrist signed the progress note.  AR 323-24.

1   On August 21, 2007, Plaintiff sought refills of Seroquel, Zoloft and Risperdal.  She

2   denied any medication side effects.  AR 318.

3   ALJ's Findings

4   The ALJ found that Plaintiff had not engaged in substantial gainful activity since

5   February 25, 2005.  She had the severe impairments of major depressive disorder, polysubstance

6   abuse and chronic liver disease.  Despite these impairments, the ALJ determined that Plaintiff

7   retained the residual functional capacity ("RFC") to lift 20 pounds occasionally and 10 pounds

8   frequently, could sit, stand and walk six hours out of an 8-hour day, could perform simple

9   repetitive tasks, maintain attention, concentration, persistence and pace, relate to and interact

10   with others, adapt to usual changes in work settings, and adhere to safety rules.  With this RFC,

11   Plaintiff could perform her past relevant work as a fast food worker.  Alternatively, she could

12   perform other jobs existing in the national economy.  AR 11-16.

13   **SCOPE OF REVIEW**

14   Congress has provided a limited scope of judicial review of the Commissioner's decision

15   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

16   the Court must determine whether the decision of the Commissioner is supported by substantial

17   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

18   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

19   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

20   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

21   401.  The record as a whole must be considered, weighing both the evidence that supports and

22   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

23   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

24   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

25   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

26   Commissioner applied the proper legal standards, and if the Commissioner's findings are

27   supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d

28   509, 510 (9th Cir. 1987).

1

**REVIEW**

2      In order to qualify for benefits, a claimant must establish that she is unable to engage in

3   substantial gainful activity due to a medically determinable physical or mental impairment which

4   has lasted or can be expected to last for a continuous period of not less than 12 months. 42

5   U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of

6   such severity that she is not only unable to do her previous work, but cannot, considering her age,

7   education, and work experience, engage in any other kind of substantial gainful work which

8   exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

9   The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

10   Cir. 1990).

11      In an effort to achieve uniformity of decisions, the Commissioner has promulgated

12   regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

13   C.F.R. §§ 416.920 (a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1)

14   had not engaged in substantial gainful activity since her alleged onset date; (2) has an impairment

15   or a combination of impairments that is considered "severe" (major depressive disorder,

16   polysubstance abuse and chronic liver disease) based on the requirements in the Regulations (20

17   C.F.R. § 416.920(c)); (3) does not have an impairment or combination of impairments which

18   meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;

19   (4) she could perform her past relevant work as a fast food worker; and, alternatively (5) she

20   could perform other jobs existing in significant numbers in the national economy. AR 11-16.

21      Here, Plaintiff contends that the ALJ erred by (1) rejecting the opinion of Dr. Hirokawa;

22   (2) questioning her credibility; and (3) failing to consider her medication side effects.

23

**DISCUSSION**

24   A.   Medical Opinion of Consultative Examiner, Dr. Hirokawa

25      Plaintiff contends that the ALJ committed reversible error when he failed to give valid

26   reasons for rejecting the opinion of examining psychologist, Dr. Hirokawa. This contention fails

27   because the ALJ did not reject the opinion of any of the physicians who addressed Plaintiff's

28

1   mental RFC.  Indeed, the ALJ properly relied on the opinions of Dr. Hirokawa and the state

2   agency physicians in reaching his conclusion regarding Plaintiff's mental condition.  AR 15.

3        Plaintiff further argues that the ALJ erred because the mental RFC did not include all of

4   the limitations imposed by Dr. Hirokawa.  Specifically, Plaintiff argues that while the ALJ gave

5   "significant weight" to Dr. Hirokawa's opinion, he failed adopt Dr. Hirokawa's opinion that

6   Plaintiff's abilities to maintain attention and concentration, to complete a normal workday or

7   workweek without interruptions on a consistent pace, to interact with coworkers and to deal with

8   various changes in the work setting were poor.  AR 264-65.

9        This argument also fails.  First, the ALJ indicated that he was giving significant weight to

10  Dr. Hirokawa as an examining source, but he did not say that he was adopting the entire opinion.

11  AR 15.  An ALJ need not believe everything a physician sets forth, and may accept all, some, or

12  none of the physician's opinions. *Magallanes v. Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989).

13       Second, the ALJ also relied in part on the non-examining state agency physician's

14  opinion that Plaintiff retained the mental RFC to perform simple, repetitive tasks.  AR 15, 286-

15  88.  This is consistent with Dr. Hirokawa's finding that Plaintiff had a fair ability to understand

16  and remember very short and simple instructions.  AR 264.  Reports of the non-examining

17  advisor need not be discounted and "may serve as substantial evidence when they are supported

18  by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035,

19  1041 (9th Cir. 1995).

20       Third, both the state agency physician and the ALJ noted questions concerning Plaintiff's

21  credibility.  AR 14-15, 272-85.  As discussed in detail below, the ALJ properly discounted

22  Plaintiff's credibility.  *See* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001) (holding

23  that when the record supports the ALJ's discounting of the claimant's credibility, the ALJ is free

24  to disregard a doctor's opinion premised on the claimant's subjective complaints).  Here, the ALJ

25  considered Dr. Hirokawa's own finding of inconsistencies between a Report of Contact and

26  Plaintiff's presentation at the examination.  AR 15, 264.  The ALJ also considered Dr.

27  Hirokawa's inability to determine certain of Plaintiff's abilities because she was selectively mute.

28  AR 15, 2664-65.  Accordingly, the ALJ properly omitted certain of Dr. Hirokawa's limitations

because Plaintiff gave a poor effort and because Dr. Hirokawa's limitations were based on her

inconsistent presentation at the examination.  *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554

F.3d 1219, 1228 (9th Cir. 2009) (ALJ reasonably discounted physician opinion based on

claimant's less than credible statements); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ

did not err in disregarding physician's opinion that was premised on claimant's properly

discounted subjective complaints).

B.    Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in finding that her credibility was questionable.  In

particular, Plaintiff contends that the ALJ failed to provide clear and convincing evidence that

she was not credible.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir.2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or
> other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th
> Cir.1989). However, to discredit a claimant's testimony when a medical
> impairment has been established, the ALJ must provide " 'specific, cogent reasons
> for the disbelief.' " *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The
> ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.*
> Where, as here, the ALJ did not find "affirmative evidence" that the claimant was
> a malingerer, those "reasons for rejecting the claimant's testimony must be clear
> and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for
> rejection of a claimant's testimony ... An ALJ's decision to reject a claimant's
> testimony cannot be supported by reasons that do not comport with the agency's
> rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have
> the same force and effect as the statute or regulations, they are binding on all
> components of the Social Security Administration, ... and are to be relied upon as
> precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131
> (10th Cir.1998) (concluding that ALJ's decision at step three of the disability
> determination was contrary to agency regulations and rulings and therefore
> warranted remand). Factors that an ALJ may consider in weighing a claimant's
> credibility include reputation for truthfulness, inconsistencies in testimony or
> between testimony and conduct, daily activities, and "unexplained, or
> inadequately explained, failure to seek treatment or follow a prescribed course of
> treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ questioned Plaintiff's credibility for several reasons.  First, the ALJ cited

evidence "strongly suggesting" that Plaintiff had exaggerated symptoms and limitations.  AR 14.

As an example, the ALJ observed that in November 2003, Plaintiff complained of severe back pain and demanded codeine, but refused to give details about her previous physician and did not have a prescription or empty bottle to substantiate her claims.  Further, she did not display any uncomfortable sensations and did not appear to be in any distress.  The treating physician recommended x-rays and anti-inflammatory medication, but Plaintiff refused and began accusing the clinic of not giving her healthcare.  AR 14, 223.  The ALJ also noted that in January 2004, Plaintiff complained of generalized body pain and wanted Vicodin.  She refused another medication because she only wanted Vicodin.  AR 15, 220.   In addition, the ALJ cited Dr. Nowlan's report in 2005 that there were no physical findings to go along with any of Plaintiff's complaints of pain and that he was unable to elicit any pain by anything he did.  AR 14, 269. The ALJ properly took into account Plaintiff's inconsistent statements, her drug-seeking behavior, and the observations of her treating and examining physicians to discount her credibility.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider ordinary techniques of credibility evaluation, such as prior inconsistent statements and other testimony that appears less than candid); Soc. Sec. Ruling ("SSR") 96-7p; *see also Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ may consider drug-seeking behavior in assessing credibility).

Third, the ALJ noted evidence that Plaintiff was less than fully cooperative.  In particular, the ALJ cited Dr. Hirokawa's examination report, which found inconsistencies in Plaintiff's presentation and indicated that she was selectively mute and unable to answer any basic questions during the examination.  AR 15, 261, 264-65.  Plaintiff's lack of cooperation supports the ALJ's determination as to her credibility.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's efforts to impede accurate testing of her limitations by failing to give maximum or consistent effort supported ALJ's determinations as to lack of credibility).

Fourth, the ALJ questioned Plaintiff's credibility based on her inconsistent statements regarding drug usage.  AR 15.  The ALJ observed that (1) she denied illicit drug use, but tested positive for cocaine in May 2006, (2) at an initial mental health assessment, she reported last using crack cocaine in 1978, but subsequently told Dr. Shalts in November 2006 that she last

used cocaine seven years prior; and (3) she tested positive for cocaine in December 2006.  AR 15, 303, 376, 379-81, 393-98.  An ALJ may properly consider inconsistent statements regarding drug use as diminishing a claimant's credibility.  *Thomas*, 278 F.3d at 958-59; *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ credibility findings properly considered claimant's inconsistent statements regarding substance use).

Finally, the ALJ discounted Plaintiff's credibility based on her cancelling or failing to show  for appointments on a number of occasions.  AR 15, 308.  A claimant's failure to seek or follow prescribed treatment is a proper basis for finding her allegations not credible. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir.2001).  Here, the record reflects that Plaintiff failed to obtain treatment for hypertension or other physical complaints between October 2006 and May 2007, and she was not compliant with her medication during that time.  AR 308.  She also failed to show for a number of mental health therapy sessions and did not return phone calls from her therapist.  AR 317, 327, 328, 364, 374, 375, 378, 383, 388, 390.  Thus, the ALJ's determination regarding missed appointments is supported by substantial evidence and is a proper basis to discredit her testimony.

In sum, the ALJ provided clear and convincing reasons supported by substantial evidence for finding Plaintiff's testimony not credible.

C.      Medication Side Effects

As a final matter, Plaintiff argues that the ALJ erred by failing to discuss the side effects of her medication on her ability to work.  Specifically, Plaintiff alleges that the ALJ did not consider her testimony that Seroquel and Risperdal make her drowsy and sleepy, requiring her to take rest breaks from 4 to 6 hours out of an 8 hour-day.  AR 34, 36; Opening Brief, p. 11.

Pursuant to SSR 96-7p, an ALJ should consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." However, an ALJ need only consider factors that might "have a significant impact on an individual's ability to work." *See Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993).  Even "passing mentions of side effects" in some of the medical records would be insufficient in the

absence of evidence of side effects "severe enough to interfere with [a claimant's] ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir.2001).

Here, Plaintiff fails to identify any evidence suggesting that she was suffering from drowsiness, sleepiness or other adverse side effects from her medications.  Indeed, the medical record indicates that Plaintiff either denied side effects or reported no side effects from her medications.  AR 318, 323-24, 329-30, 352.  Thus, the ALJ did not commit error based on an asserted failure to consider side effects from Plaintiff's medications.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Marie Walker.

IT IS SO ORDERED.

**Dated:   February 9, 2011             /s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE